### D. K. TAYLOR v. BIRD ROSE.

Decided November 22, 1902.

**1.—School Land—Sale—Lease—Improvements—Preference.**

Where there are improvements on leased State school land at the expiration of the lease, only the person who made them can claim the privilege as to leasing again given by the Act of April 19, 1901.

**2.—Same—Sale or Lease—Actual Settler or Lessee.**

Where, at the expiration of the lease, the lessee having improvements thereon applies to lease again and there is a contemporaneous application by another to purchase as an actual settler, the land should be awarded to the latter, the declared purpose of the law being to lease only such lands as are not in immediate demand for settlement. Gen. Laws 1901, p. 295.

Appeal from the District Court of Martin County. Tried below before Hon. W. R. Smith.

*C. H. Earnest, L. G. Wilson,* and *G. W. Jarrott,* for appellant.

*Beaty & McGee, A. S. Hawkins,* and *Camp & Caldwell,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The question at issue in this case is whether the right of appellant to purchase a section of school land in Terry County was superior to that of appellee to lease it. The conflict between the respective applicants was decided by the Commissioner of the General Land Office, and also by the court trying the case, in favor of appellee.

The land was originally covered by a five years lease made to Gregory & Hastings, and by them assigned to appellee, which expired August 25, 1901. Before the expiration of this lease, on August 22, 1901, appellee filed application to lease the section in controversy; and after it expired, "on the 26th or 27th of August, 1901," as found by the court, there being no statement of facts, he made another application to lease it, and on September 27, 1901, the Commissioner executed to him a lease in accordance with his applications, which he placed of record, paying the first year's rental in advance as required by law. The court found that "there were improvements situated upon the section of land in controversy prior to August 24, 1901, and on said date, which were of the reasonable market value of $300 or more."

The facts upon which plaintiff's claim rests were thus stated in the court's findings:

"8.   On August 26, 1901, defendant, D. K. Taylor, being an actual settler in good faith upon section No. 4, block D8, E. L. & R. Ry. Co. survey in Terry County, and being desirous of purchasing same as a home, on that date made his application, affidavit, and obligation in due form as required by law, to purchase same as an actual settler, all of which he on same date filed with the county clerk of Martin County, Texas.   And on same date he made and filed with said clerk his application, affidavit, and obligation in due form and substance to purchase the land in controversy as additional land.   And at the time of making said applications he paid to said clerk the first payment required by law on each of said sections, and has paid the interest thereon.

"9.   Prior to the filing of said applications the Land Commissioner had classified each of said sections as dry grazing, and appraised them at $1 per acre, and had notified the clerk of the County Court of Martin County in writing of such classification and appraisement, which notification had been by said clerk duly recorded as required by law.

"10.   Said section in controversy was within a radius of five miles of said section No. 4, and at the time of making said applications defendant had never purchased any other State school land."

The judgment rests upon the following conclusions of law:

"1.   I find that as the land in controversy had $300 worth of improvements on it at the expiration of the lease which plaintiff held thereon, to wit, on August 25, 1901, same was not on the market subject to sale at the time defendant Taylor made his application to purchase said section, and therefore said Taylor acquired no right to or interest in said section by his application to purchase same.

"2.   I find that the Land Commissioner legally leased the section in controversy to plaintiff on September 27, 1901."

Both parties to the appeal seem to rely upon the opinion of Chief Justice Gaines in the case of Hazlewood v. Rogan, 95 Texas, 295, 67 Southwestern Reporter, 80, construing the Act of 1901, under which their respective applications were made.   The construction given to that act we understand to be that school land, whether situated within or without the absolute lease district, is subject to sale at the expiration of a lease, without reference to the value of the improvements which the lessee may have placed upon it; and that if it be in the absolute lease district, as in this instance, it "shall remain subject to sale for a period of sixty days, except where there are improvements on a section of the value of $200 or more," in which case it would be subject to sale and also to lease to the lessee who made the improvements, and that the applicant, "whether as purchaser or lessee, who made the first application, would have the prior right."   The opinion, it is true, does not authoritatively hold that the exception made by reason of the improvements was intended as a privilege to him only by whom the improvements were made, but clearly intimates that view, which accords with

the conclusion previously announced in the opinion upon another feature of that case, denying to the assignee of a lease the rights conferred upon the original lessee.

The court below did not find that appellee had made the improvements in question himself so as to entitle him to a release of the land, if, indeed, in any case the assignee could claim such right, but on the contrary the implication is that they had been made by the original lessee; and it is also a fair inference from the court's findings that the application of appellee to lease was not prior to, but, at best, was contemporaneous with that of appellant to purchase. If, then, we adopt the view intimated in the opinion of Chief Justice Gaines, the Commissioner was wrong in leasing the land to appellee, for it was subject to sale when appellant applied to purchase it, and would have remained so for sixty days had no application to purchase been made, the language of the opinion on this point being: "It would seem, however, that since the exception is made by reason of the improvements, the privilege was intended to be granted to him only by whom the improvements were made." It therefore became his duty not only to suspend action for sixty days upon appellee's applications to lease, but also to award it upon appellant's application to purchase. But suppose appellee by reason of the improvements was entitled to the benefit of the exception, and that his application to lease was contemporaneous with that of appellant to purchase, and that both were made as soon as they could have been after the expiration of the original lease (which seems to have been the case), to whom should the Commissioner have awarded the land? We answer, to appellant. Any other construction would place it in the power of a lessee having improvements of the value of two hundred dollars or over, on a section of school land in the absolute lease district, by making application to release before or immediately upon the expiration of the former lease, to prevent its sale forever, notwithstanding the undoubted purpose of the framers of our Constitution and laws to give the actual settler not only the right to purchase, but also the preference over an applicant to lease. The Act of 1901 only authorizes the Commissioner to accept a lease where the land is "not in immediate demand for actual settlement," thus differing, at least in the language employed, from previous acts, which authorized him to lease "if satisfied" that the lands applied for were not in immediate demand for purposes of actual settlement. In the case before us, excluding as entitled to no consideration the premature application to lease, and treating the other applications as contemporaneous, we must interpret the action of the Commissioner in accepting the application of appellee to lease and the judgment of the court in affirming the correctness of his action as a clear disregard of the condition above quoted, which, under the facts of this case, left no room for discretion in the Commissioner. A law which would give no reasonable opportunity to an actual settler to purchase at the end of a lease, and of lease

after lease, would be unconstitutional, and yet that would be the effect of the present law if the action of the Commissioner be upheld in this case.

Therefore, upon the court's findings of fact and the foregoing conclusions of law, the judgment will be reversed and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.